James G. RYAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7073.

United States Court of Appeals Tenth Circuit.

Feb. 25, 1963.

Rehearing Denied March 18, 1963.

Bernard D. Morley, Denver, Colo., for appellant.

Merle R. Knous, Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., with him on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellant, James G. Ryan, was tried and convicted before a jury, in the United States District Court for the District of Colorado, upon an information containing six counts, all brought under 26 U.S.C. § 7203. Each count charged a wilful failure to file the required employer's quarterly tax return. Counts I, III and V concerned employees income taxes withheld, and, Counts II, IV and VI concerned Federal Insurance Contributions Act[1] taxes. Motions for new trial and for judgment of acquittal pursuant to Rule 29, F.R.Crim.P., 18 U.S.C.A., were filed and denied, and this appeal resulted.

In substance, appellant urges error because of insufficiency of the evidence and also attacks the instructions of the trial court.

In October, 1955, Ryan, Earl B. Martin and Marjorie C. Smith entered into a business venture, for the purpose of purchasing, clearing and subdividing a tract of land near Denver, and thereafter selling the subdivided lots. At the inception, they operated as a partnership but on December 19, 1955, filed their articles of incorporation as Timberline Corporation. Ryan became president and secretary of the corporation with a monthly salary of $150.00, for the supervisory work he performed for the corporation from an office in the City of Denver.

[1]. 26 U.S.C. § 3101 et seq.

This office was also used by Ryan to carry on other business ventures. Another office was maintained on the project from which Martin, as vice president and treasurer of the company, supervised the actual development of the project, with a salary of $400.00 per month. Work on the project continued under this arrangement until July, 1956, when Martin left the employ of the corporation after a disagreement with Ryan. Soon thereafter, Martin tied up the corporate bank account by legal action.

At the inception of the venture, by corporate action, the signatures of both Ryan and Martin were required for all banking transactions. In January, 1956, one of the bookkeepers was also authorized to transact banking business for the corporation. On December 10, 1955, Janice LaBounty went to work in the Denver office as a bookkeeper, at a gross salary of $325.00 a month. Income and social security taxes were withheld from her salary for the last quarter of 1955, as well as during her employment with the corporation for the first and second quarters of 1956, these three quarters being the ones covered by the information.

In December, 1955, an accounting firm was employed to set up books and records for Timberline Corporation. Ryan told the accountant that Timberline was a corporation and corporate books and records were set up, including employment records, and records reflecting salaries of employees, withholding taxes and social security taxes.

On December 23, 1955, Ryan at the suggestion of the accountant, signed the regular Internal Revenue Form of Employers Application For Identification Number under the Federal Insurance Contributions Act. He therein showed the employer to be "Timberline Corporation"; gave its Denver office address as the principal place of business; under type of organization checked "corporation"; gave December 3, 1955, as the first date employer paid taxable wages to one or more employees; and stated the number of employees was 10. This application was filed with the Internal Revenue Service on January 9, 1956.

LaBounty, who had received instructions from the accountant about the bookkeeping, on January 19, 1956, prepared the Employer's Quarterly Federal Tax Return (Form 941) covering the last quarter of 1955, for the corporation, together with a corporation check in the amount of $706.58, in payment of both withholding and social security taxes due. The signatures of both Ryan and Martin were required on the check. Martin signed the same but Ryan refused to sign it that day and on several subsequent occasions. On April 10, 1956, LaBounty prepared for Ryan's signature Form 941 covering the first quarter of 1956, and thereafter a check, in payment of the taxes shown to be due from the corporation for that quarter. Ryan refused to sign this return and check. In June, 1956, LaBounty quit her job and Freida Teeter took her place. Conversations between Ryan and the several bookkeepers were had about the filing of these tax returns but the substance of those conversations is in dispute. Jean Raycraft succeeded Tetter as bookkeeper in August, 1956, and she prepared a Form 941 return for the corporation covering the taxes due for the second quarter of 1956. She talked with Ryan about this return but he did nothing about it. Helen Duvall became an office employee in the summer of 1956 and testified that she was present on one occasion when Raycraft advised Ryan that Form 941 needed to be filled out and filed.

Early in 1957, Ryan was interviewed by an agent for the Internal Revenue Service and he advised the agent that corporate tax returns had not been filed because the corporation had no employees, thus, nothing had been withheld. Ryan further stated that nothing had been withheld for even the office help because the bookkeeping was subcontracted to a Denver accounting firm. The agent was also advised by Ryan that the corporate books were not available because they were in the hands of an attorney.

About the time of this interview, the corporation received some Forms 941 through the mail, and they were discussed between Ryan and Duvall. Ryan told Duvall to go ahead and fill them out, but Duvall said she did not know how to do it. A short time later Ryan gave Duvall the filled out forms and told her to sign and file them, which she did on March 29, 1957. These returns covered the first and second quarters of 1956. No return has ever been filed for the last quarter of 1955. During 1959 all of the taxes under the two returns filed were paid, either by levy upon corporation funds or by Ryan from his personal funds.

■■ Appellant's first point relates to the sufficiency of the evidence. In our consideration of this issue, we must view the evidence and the inferences to be drawn therefrom in the light most favorable to the prosecution. Swallow v. United States, 10 Cir., 307 F.2d 81, cert. denied, 83 S.Ct. 504. When so considered, we find little merit to any of appellant's contentions.

Ryan asserts there is no proof that the corporation had a duty or was required to make and file the tax returns. No witness was asked to state whether the corporation was required to file the returns, but that is not the proper method of proving a violation of the tax law. The basic facts bringing the corporation within the purview of the requirements of the law must be proved and the record discloses all of those basis facts. The evidence clearly shows, by the oral testimony of employees themselves, that the corporation was an employer during each quarter in question, that the employees were paid wages, that both income and social security taxes were withheld by the employer and that the quarterly tax returns, as required by law, were not filed when due.

The record before us does not disclose any real issue as to the existence of the corporation, although Ryan says that the evidence was not sufficient to prove a corporation existed. It is true the government did not introduce a copy of the articles of incorporation, but, by other competent evidence the existence of the corporation was proven. This evidence consisted of admissions on the part of Ryan, the testimony of Martin, one of the incorporators, and statements contained in the various exhibits offered and received. As the government points out, the question of the existence of Timberline, as a corporation, was only a collateral issue in the case.

Ryan further argues that there is no evidence he owed any tax for the periods in question. We agree with that contention, but, that is not the gist of the offenses charged. It was not claimed that he owed a tax. The contention of the government was that the corporation owed the tax and Ryan, as the managing officer of the corporation, had the obligation to make the returns, which he did not do.

Appellant also contends the evidence is insufficient to prove that he had a duty to file the corporate tax returns. It is true Ryan testified Martin was hired to run the affairs of the corporation and that he, Ryan, did not take over the supervision until Martin left his position with Timberline. However, there was an abundance of evidence from which the jury could, as it did, find that Ryan was the one running the venture and, as such, he had the duty to make or cause to be made the corporate returns. All of the employees in the Denver office, where the books and records were kept, testified that Ryan employed and supervised them in his capacity as president of the concern. There is evidence showing that Ryan hired an accounting firm to set up the corporate books and records and advised the accountant what books and records he wanted. Thereafter, at the instance of the accountant, Ryan signed and caused to be filed an Employers Application For Identification Number under the Federal Insurance Contributions Act. On the application he gave his Denver office address as the principal place of business of the corporation. We think this evidence is clearly sufficient to establish such a duty on his part.

■■ Appellant raises several questions concerning the giving or failure to give instructions. It is settled law, under Rule 30, F.R.Crim.P., 18 U.S.C.A., that questions pertaining to instructions may be raised on appeal only if objections were timely and properly made to the instructions. Burns v. United States, 10 Cir., 286 F.2d 152; Sells v. United States, 10 Cir., 262 F.2d 815, cert. denied, 360 U.S. 913, 79 S.Ct. 1298, 3 L.Ed. 2d 1262; Corbin v. United States, 10 Cir., 253 F.2d 646. The only exception to this rule is the authority of an appellate court under Rule 52, F.R.Crim.P., 18 U.S.C.A., to notice "plain errors affecting substantial rights." Wright v. United States, 10 Cir., 301 F.2d 412; McMurray v. United States, 10 Cir., 298 F.2d 619, cert. denied, 369 U.S. 860, 82 S.Ct. 950, 8 L.Ed.2d 18; Fischer v. United States, 10 Cir., 212 F.2d 441. The record discloses only one statement by defense counsel after the instructions were given, which could be considered as an objection.[2] That objection, if it be so considered, is not in compliance with Rule 30, in that it does not, as required by the rule, state "distinctly the matter to which he objects and the grounds of his objection." Burns v. United States, 10 Cir., 286 F.2d 152, 157. Counsel for appellant, who was not defense counsel at trial, argues here that such objection relates to the court's failure to instruct on the definition of a "person" as used in § 7203. Government counsel has a different view, contending the objection was intended to cover the court's failure to give defendant's requested instruction Number 2, which distinguished between employees and independent contractors, and contained the word "control" in several places. This argument is supported by the fact that the word "control" was used in the questioned objection. The disagreement on the point demonstrates that the objection did not distinctly state the matter to which objection was being made.

■ Appellant takes issue with the trial court's instruction to the jury on the necessary element of wilfulness.[3] He

2. "It is the Court's belief that all of the exhibits will be in the jury room. Are there any objections?
"Mr. Knous: I have no objections.
"Mr. Berger: No objections. Your Honor, in chambers we asked the Court to make an instruction on control, I believe.
"Judge Doyle: I didn't tender one. Do you want the record to show that the Court didn't tender an instruction?
"Mr. Berger: Yes, sir. If the action was not within the control of the Defendant then the jury should have been instructed not to find him guilty as a responsible party.
"Judge Doyle: I will note that you made the request and that you had mentioned it in chambers."

3. "In order to find the Defendant guilty, the jury must establish beyond a reasonable doubt that he failed to file a return as described in the information, and two, and it was of a wilful and knowing nature. If the jury establishes this beyond a reasonable doubt, then they shall find the Defendant guilty. However, if the jury entertains a reasonable doubt that the Defendant was not required to file a social security or tax return

because of a good faith belief that these people were not in his employ but were independent contractors, then the jury must find the Defendant not guilty.
"If the jury establishes beyond a reasonable doubt the elements of knowledge and intent on the part of the Defendant, then they shall find the Defendant guilty, but if they establish that the Defendant entertained a reasonable belief that he was not required to file a return, then the element of intent is not established and the jury will have to say not guilty.
"An act is done knowingly if it is done voluntarily and purposely, not because of mistake or inadvertence. An act is done wilfully if done voluntarily and purposely and with the specific intent to do that which the law forbids. That is to say, an act done with bad purpose either to disobey or disregard the law. The requirement that the failure to make and file a return be done wilfully exists so that the accused will not be convicted of failing to make or file such return because of mistake or inadvertence. If the jury entertains a reasonable doubt as to whether the man made a mistake, and the act was not intentionally and knowingly done, then the jury shall find him not guilty."

further contends that the instruction approved by this Court in Haskell v. United States, 10 Cir., 241 F.2d 790, cert. denied, 354 U.S. 921, 77 S.Ct. 1379, 1 L.Ed.2d 1436, does not meet the test laid down in United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381. We do not agree. The instruction under objection in Haskell was approved because the Court considered that instruction, not standing alone, but in connection with all of the instructions given in the case. By applying that test to the instructions the Court was able to conclude that all of the necessary elements of the crime charged had been presented to the jury. Likewise, viewing all the instructions given in this case, we feel that the jury was adequately instructed on the elements of the offenses including wilfulness.

The appellant also urges that the trial court erred in refusing to give his requested instructions differentiating between an employee and an independent contractor. The evidence in the case, as set out above, is uncontradicted. It conclusively shows that Timberline Corporation did have employees and Ryan's contention to the contrary was without evidentiary support. Under these circumstances the court was not compelled to give such an instruction. The instructions should be confined to the issues in the case and the pertinent facts developed by the evidence. Even though a requested instruction may be a correct statement of abstract law, it should be refused if it is directed to a matter outside the issues presented and the evidence adduced. Velasquez v. United States, 10 Cir., 244 F.2d 416.

In our consideration of this appeal, we have carefully reviewed the entire record and conclude that Ryan had a fair trial, that there is an abundance of evidence to support the jury verdict and there are no "plain errors affecting substantial rights" in the record that we should take note of under Rule 52.

Affirmed.