**GENERAL MOTORS CORPORATION, Appellant,**

v.

**Dorethea M. WALDEN, the surviving spouse of Homer L. Walden, Deceased, Appellee.**

**No. 9729.**

United States Court of Appeals
Tenth Circuit.

Jan. 15, 1969.

---

John A. Criswell, Englewood, Colo. (Myrick, Criswell & Branney, Englewood, Colo., were with him on the brief), for appellee.

Before JONES,* BREITENSTEIN and HOLLOWAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The jury awarded appellee-plaintiff, Dorethea M. Walden, $95,000 for the death of her husband in a one-car automobile accident occurring in Arizona. The appellant-defendant, General Motors Corporation, seeks a reversal of the judgment because of claimed errors in the instructions.

On October 9, 1965, the decedent was driving south towards Tucson in a Corvair automobile which he had purchased about one month before and which had been driven 3,210 miles. The paved, double-lane, 41-foot highway had a slight turn to the decedent's right. The driver of a car approaching from the south first saw the Corvair when it was about 1,000 feet away. At that time it was slightly to the left of the painted dividing line. As it neared the other car, the Corvair turned back into its lane of traffic. The driver of the northbound car and a passenger testified that, when the Corvair was three or four car-lengths away, they saw smoke coming from the left rear wheel. After the cars had passed, the Corvair spun into a ditch. The decedent was thrown out and killed. He had not been using the safety belt with which the car was equipped.

The weather was clear and dry and the sun was shining. The northbound car was traveling at about 50 or 60 miles an hour. The driver of that car and a passenger guessed the speed of the Corvair at 55 to 70 miles an hour. The patrolman who investigated the accident calculated the speed from the skid marks at 56 or 57 miles per hour. An expert for the plaintiff fixed the speed at 61.4 miles per hour.

A chemist from the Tucson police laboratory testified that an examination of

John C. Mott, Denver, Colo. (Zarlengo, Mott & Carlin, Denver, Colo., and Ross L. Malone, Roswell, N. M., were with him on the brief), for appellant.

* Of the Fifth Circuit, sitting by designation.

a sample of the blood taken from the decedent's body showed .19% alcohol by weight. The validity of the blood test was contested by the plaintiff. A defense expert testified that the amount of alcohol found was sufficient to make a person unfit to drive a motor vehicle. No evidence of alcohol or intoxicants was found at the scene of the accident.

The theory of the plaintiff, substantiated by an expert witness, was that the universal-joint bearings on the left rear drive shaft flange were improperly assembled and that the bearing retainer strap separated with a comparatively loud noise. When the brakes were applied, the drive shaft on the left side was freed, the left rear wheel locked, and the car started to move to the left. The driver tried to steer out of his predicament. The right rear wheel and then the front wheels locked. By that time the driver had over steered and the car spun off the road. The defendant had witnesses testifying on proper assembly but such testimony is omitted from the record. A defense expert said that the accident was caused by the application and locking of the brakes while the front wheels were turned to the right.

An affirmative defense was that the accident and death were proximately caused by the sole or contributory negligence of the decedent. The defendant urges that the judgment must be reversed because its theory of the case was not presented to the jury in the court's instructions.

■ A party is entitled to have the jury instructed properly on his theory of the case if such theory is supported by competent evidence.[1] This is a product liability case in which the plaintiff introduced evidence of defective workmanship. The sufficiency of the evidence to sustain the verdict is not questioned.

The argument of General Motors is that the decedent was contributorily negligent and that the court erred in not instructing the jury on all of the aspects of contributory negligence which it urged. At the time of the trial the applicability of the defense of contributory negligence in a product liability case had not been clearly resolved by the courts[2] and had not been settled in Arizona. Since then, the Arizona Supreme Court has decided O. S. Stapley Company v. Miller, 103 Ariz. 556, 447 P.2d 248, a product liability case. The court said that in such a case there are three separate divisions of what is loosely termed contributory negligence. These are (1) failure to discover a defect which should have been discovered by reasonable diligence, (2) use of the product notwithstanding the discovery of the defect, and (3) use of the product in a manner or for a purpose not reasonably foreseen by the manufacturer. It characterized (1) as contributory negligence, (2) as assumption of risk, and (3) as misuse.

Here we have no claim that the decedent knew, or by the use of reasonable diligence could have known, of the defect. Our concern is with misuse. We view the instructions in the light of the Arizona law which has been declared since the trial.

The court told the jury that the plaintiff claimed that the Corvair was improperly assembled; that General Motors denied improper assembly and asserted that, if there was, the accident was not proximately caused thereby. The court pointed out that General Motors affirmatively claimed that the decedent was negligent in not using his seat belt and in driving while under the influence of intoxicating liquor and that such negligence was the proximate cause of the accident and death. The court instructed that the jury should first deter-

---

1. Dallison v. Sears, Roebuck and Co., 10 Cir., 313 F.2d 343, 345. This is the rule in Arizona. See Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071, 1075, and Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240, 245.

2. See Dallison v. Sears, Roebuck and Co., 10 Cir., 313 F.2d 343, 346, and Speed Fastners, Inc. v. Newsom, 10 Cir., 382 F.2d 395, 399.

mine the question of improper assembly and, if there was, whether it was the proximate cause. The court said that if the jury found in the affirmative on these issues, it must then consider

"whether or not Walden was negligent in either of the respects claimed by the defendant, and if you find that Walden was guilty of negligence, and that such negligence was the sole or a contributing proximate cause of the accident and Walden's death, then your verdict shall be for the defendant and against the plaintiff.

If you find that there was an improper assembly and that it was a proximate cause of the accident and Walden's death, and you further find that Walden was not guilty of negligence which was a proximate or contributing cause of the accident and Walden's death, then your verdict shall be for the plaintiff and against the defendant."

█ We believe that the instructions were proper. The first consideration was whether the product was improperly made and, if so, whether the faulty make was the proximate cause. A negative answer on either point requires a verdict for the defendant. An affirmative answer on each point makes necessary consideration of the claimed misuse by the decedent.

General Motors says that reference in the instruction to drinking and to failure to use the seat belt eliminated consideration of its claims of other negligence. The court rejected instructions based on Arizona statutes covering reckless driving, speed, passing vehicles proceeding in opposite directions, and driving on the right side of a road. It acted on the ground that the evidence was not sufficient to justify instructions on these points. We believe that the court was right.

█ A party is entitled to an instruction on his theory of the case only if that theory is supported by competent evidence. The accident was caused by a spin—not by a collision. The only statute of any pertinence was that regarding speed. The daytime Arizona speed limit is 65 miles per hour,[3] except where posted. One witness said that at the point where the accident occurred the posted limit was 60 but no effort was made to show that such posting satisfied the applicable statute.[4] The only statements of a speed in excess of 65 were the admitted guesses of two occupants of the car approaching from the south. The experts fixed the speed at less than the statutory limit. Evidence to justify an instruction must be something more than conjecture and speculation.

█ We believe that the instructions were fair and adequate. The claims of negligence, or misuse, by the decedent in failing to use the seat belts and in driving while under the influence of intoxicants were presented to the jury. The other claims of misuse were not supported by competent evidence and were properly rejected. The instructions were in accord with the Arizona law declared in the Stapley decision.

In the portion of the instructions covering communication with the court during deliberations, the court told the jury to "bear in mind that you are not to reveal to the Court or to anyone how you stand numerically or otherwise upon the issues * * * until after you have reached a unanimous verdict." After the jury had deliberated for some time, it sent the following note to the court:

"Your honor, we are sitting five to one, and apparently cannot get closer. We do not know what to do. Will you please instruct us?"

In the absence of counsel,[5] the court answered thus:

"The Court has received your note and advises that you are to continue to deliberate."

3. Ariz.Rev.St. § 28–701.

4. Id. § 28–702.

5. Counsel had apparently left the courthouse even though told by the court to remain.

Within less than an hour, the court told counsel of the note and the answer. In so doing the court reported that the jury had disregarded its admonition not to divulge the numerical standing but the court did not then say what the division was. No counsel objected, moved for a mistrial, or requested further instructions. Shortly thereafter the jury returned its verdict for the plaintiff. In its motion for judgment n. o. v. or for a new trial, General Motors relied in part on the court's communication to the jury.

The argument is that supplementary instructions in the absence of counsel are improper and require reversal unless lack of harm affirmatively appears. Fillipon v. Albion Vein Slate Co., 250 U.S. 76, 82, 39 S.Ct. 435, 63 L.Ed. 853 and Parfet v. Kansas City Life Ins. Co., 10 Cir., 128 F.2d 361, 362, cert. denied 317 U.S. 654, 63 S.Ct. 50, 87 L.Ed. 526, are cited in support of this position. In each of those cases the supplementary instructions related to issues under consideration by the jury. Here the statement by the court was collateral to such issues and was an administrative direction to the jury. Neither Fillipon nor Parfet discuss the harmless error rule appearing in Rule 61, F.R.Civ.P., and in 28 U.S.C. § 2111.

Counsel say that prejudice occurred because there was no "moderating reminder" of the right of a juror to stay with his conscientious opinions and that the direction to continue deliberating could have had a coercive effect. The argument is speculative. If counsel believed what he now contends, he should have called the matter to the attention of the trial court. Instead, he made no objection to the communication and requested no further instruction to the jury. He chose to await the verdict before making complaint.[6] In such circumstances, he is in no position to claim prejudicial' error on appeal.[7] In our opinion the communication was both harmless to the parties and collateral to the issues submitted for determination by the jury. It affected no substantial right of either party and must be disregarded.

Affirmed.

---

6. Cf. Mares v. United States, 10 Cir., 383 F.2d 805, 808.

7. See Peppers v. United States, 6 Cir., 37 F.2d 346.