James W. SANDERS, Appellant,

v.

Horace BUCHANAN, Appellee.

No. 9826.

United States Court of Appeals
Tenth Circuit.

Jan. 17, 1969.

Dissenting Opinion and Rehearing
Denied March 10, 1969.

Walter L. Gerash, Denver, Colo. (Herbert W. DeLaney, Jr., Denver, Colo., with him on the brief), for appellant.

Wesley H. Doan, Denver, Colo. (William F. Dressel and Joseph N. Lilly, Denver, Colo., with him on the brief), for appellee.

Before PHILLIPS, HILL and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This appeal is from a jury verdict denying plaintiff-appellant's claim. Appellant, Sanders, a negro, sued defendant, appellee Buchanan, a policeman, for damages incurred when he was deprived of civil rights guaranteed by 42 U.S.C. § 1983. Jurisdiction is conferred by 28 U.S.C. § 1343.

Sanders contends the trial court erred in permitting the introduction of collateral evidence to impeach his testimony; that the trial court erred by making remarks during the closing argument relative to Sanders' vagrancy conviction; that the court should have given an instruction to the jury advising them that a police officer may not shoot a fleeing misdemeanant; that it was error for the trial judge to respond to an inquiry made by the jury, after it had been sequestered, without notifying counsel; that the trial court failed to instruct the jury on Denver Police Department standards of conduct.

Buchanan shot Sanders at night in an alley while Buchanan and other policemen were attempting to apprehend a suspected prowler or window-peeper. The evidence, that the jury apparently accepted, is that Sanders came from an area where the offense had been reported, leapt over an incinerator into an alleyway, where Buchanan was waiting. Sanders stopped in his flight and moved in a manner which lead Buchanan to believe he was drawing a weapon and Buchanan shot Sanders in self defense. The jury denied Sanders' claim and this appeal followed.

Sanders contends he was shot as a fleeing misdemeanant and that the law is clear that a fleeing misdemeanant may not be shot. Buchanan contends he heard several gunshots prior to Sanders' appearance in the alley, thought Sanders was armed, and did not know whether he was a fleeing felon or misdemeanant. Buchanan testified that Sanders stopped in his flight, turned, and appeared to be taking a weapon from concealment whereupon Buchanan fired in self defense.

The record reveals that during the trial the court commented upon the admissibility of evidence that tended to impeach Sanders.

"[I]t appears to the Court that the previous presence of [Sanders] * * in this area, in view of his story, is permissable on the question of his veracity to test his contention that he was there lawfully, that this was just an incidental occasion. Now, that's his story, and the defendants are entitled to correct it, * * *"

■■■■ The accuracy of the trial judge's ruling is reflected in the record by strict limitations required during the introduction of the impeaching testimony.

"Plaintiff * * * voluntarily testified in his own behalf to material facts. He was subject to impeachment as any other witness would be. As this court has said, 'The credibility of the witness is always relevant in the search for truth.' "[1]

The allegedly erroneous remarks of the trial court, concerning Sanders' vagrancy conviction, during the closing argument of Sanders' counsel must be considered in the context of the entire trial. The record reflects that the issues in the trial were defined after counsel made some admissions. It was stipulated that at the time of the injury there was probable cause to arrest Sanders on a trespassing or vagrancy charge.

1.  Creekmore v. Crossno, 259 F.2d 697, 698 (10th Cir. 1958).

The court's remarks seem to be an effort to restate the admission. The court said: "There was a conviction of vagrancy. It was admitted, and I don't see what it has to do with the case, * * *" We agree that it had nothing to do with the case. The issue was whether or not Buchanan, acting as a reasonable person, was justified under all the circumstances, as revealed by the evidence, in shooting Sanders in what he believed to be self defense. Both counsel in their arguments agreed this was the sole issue and the question whether or not Buchanan acted as a reasonable person would under all the circumstances determine the outcome of the lawsuit. We conclude the statement of the court was not error in view of the stipulations made before and during the trial. Assuming, arguendo, that the comment was error, the comment was provoked by argument of counsel which was objected to by defendant's counsel. An appellant may not complain on appeal of errors which he himself induced or invited.[2]

Sanders contends that the trial court erred by failing to give three proffered instructions; two dealing with fleeing misdemeanants and one concerning Denver Police Department standards of conduct. As Sanders' attorney accurately observed:

"[T]he only issue in this case * * is whether or not the defendant acted in self defense under the circumstances. * * *"

The requested instructions were superfluous. They dealt with facts which were extraneous to the agreed issue in the case; they simply were not relevant.

"The instructions should be confined to the issues in the case and the pertinent facts developed by the evidence. Even though a requested instruction may be a correct statement of abstract law, it should be refused if it is di-rected to a matter outside the issues presented and the evidence adduced."[3]

In addition it does not appear from the record that timely objection was made by Sanders' counsel vis-a-vis the instruction concerning the Denver Police Department's standards of conduct as they applied to Buchanan. This failure to comply with Fed.R.Civ.P. 51 precludes consideration of reversible error at this stage of the litigation.[4]

Finally Sanders contends the trial judge erred when, without first communicating with counsel, he refused to send the Rules and Regulations of the Denver Police Department to the sequestered jury in compliance with the jury's request. In order to identify the applicable rule, we must determine whether or not the trial judge's reply to the note was an instruction to the jury or an administrative direction.

The note, in haec verba, "Can we have the police manual with clauses underlined denoting the proper circumstances under which a policeman may shoot? Clauses which were read in court. /s/ Walter Rosen, Foreman" was replied to in writing by the judge in the following manner: "To the Foreman of the Jury: The court has received your request which reads as follows: 'Can we have the police manual with clauses underlined denoting the proper circumstances under which a policeman may shoot? Clauses which were read in court.' The court cannot grant this request. /s/ Trial Judge."

The manual had not been offered or received in evidence, however, the underlined clauses had been read and acknowledged as correct by the defendant during his cross-examination and was part of his testimony. The jury wanted the manual to interpret the clauses on a collateral matter. The issue was: Did Buchanan act as a reasonable man in be-

---

2. Cypert v. Baker, 399 F.2d 927, 930 (10th Cir. 1968).

3. Ryan v. United States, 314 F.2d 306, 311 (10th Cir. 1963).

4. Great-West Life Assurance Co. v. Levy, 382 F.2d 357, 359 (10th Cir. 1967).

lieving he was defending himself when he shot the plaintiff?"

The portions of the rules and duty manuals requested were:

"16.22. Officers shall not use unnecessary force or violence in making an arrest or in dealing with a prisoner or any person. Prisoners and suspects shall be treated in a fair and humane manner. They shall not be humiliated, ridiculed, taunted or embarrassed.

"12.2. Officers shll [sic] not discharge firearms in the performance of their duties except:

"12.2–2. To effect the capture or to prevent the escape or liberation of a person who the officer has reasonable cause to believe has committed a violent or dangerous felony and public safety requires instant arrest and detention; and provided also, that, previous to discharging firearms, he has used all reasonable efforts to take the suspect without success.

"12.2–3. In the defense of their own life or the life of another. §§ 8.1 and 8.26."

■ The rule with regard to giving an instruction to the jury by the court in the absence of counsel was not violated. This was a request for a document or portions of a document that were not in evidence and it would have been a potential reversible error for the trial judge to comply with the jury's request.[5]

■ The issue for the jury was admittedly self defense and therefore the regulations did not establish special standards for the determination of this issue. The standards of a reasonable man's belief that he is required to defend himself were given by the court in its instructions contained in the record:

"The standard to be used by you in determining whether or not the defendant in this case acted in self defense is essentially one of what an ordinarily prudent person would do under the same or similar circumstances.

"And so a police officer who has reasonable ground for believing and does believe that another person is about to inflict great bodily injury or death upon him may use reasonable force while securing for the arrest of his assailant provided that he uses no more or greater force or means than he in fact believed to be necessary and would appear to be a reasonably prudent person in like circumstances to be necessary in order to prevent bodily injury or death to him.

"In other words, did the defendant act as a reasonably prudent person would have acted under the same circumstances.

"Now, of course, this involves to a large extent the state of mind of the defendant insofar as it is disclosed by the evidence.

"And in determining whether or not the defendant shot the plaintiff in self defense, you should take into consideration all of the facts and circumstances in evidence which tend to shed light on the state of mind of the defendant at the time of the shooting and which you believe would have a bearing upon what a reasonably prudent person would or would not have done under like circumstances."

We conclude in light of the foregoing that the court's response to the jury's request was an administrative direction to the jury which did not prejudice the jury against the plaintiff.[6]

Affirmed.

5. Lebeck v. William A. Jarvis, Inc., 250 F. 2d 285 (3d Cir. 1957); United States v. Brandenburg, 155 F.2d 110 (3d Cir. 1946); cf. Frazier v. Beard, 201 F.Supp. 395 (W.D.Va.1962); Rocky Mountain Trucking Co. v. Taylor, 79 Wyo. 461, 335 P.2d 448 (1959).

6. General Motors Corp. v. Walden, 406 F.2d 606 (10th Cir. 1968).

## ON PETITION FOR REHEARING

ORIE L. PHILLIPS, Circuit Judge, dissenting from the order denying a petition for rehearing.

On November 22, 1965, Buchanan, then a police officer of the City of Denver, Colorado, shot Sanders while endeavoring to place him under arrest. The bullet passed through both of Sanders's legs and caused severe and permanent injuries to him.

Sanders brought this action against Buchanan to recover damages for such injuries, grounded on the claim that Buchanan used excessive and unnecessary force in effecting the arrest. From a judgment on a jury verdict in favor of Buchanan, Sanders appealed. This court affirmed. Sanders filed a petition for rehearing. A majority of the court which sat on the appeal has denied the petition. Believing that the petition should be granted, the judgment reversed, and a new trial ordered, I respectfully dissent from the order denying the petition.

At the commencement of the trial and before any evidence was introduced, it was stipulated that Buchanan had probable cause for arresting Sanders. Therefore, if there were any issues in the case as to probable cause for arrest, false arrest, or false imprisonment, they were effectively eliminated from the case, and the sole issue to be tried was whether Buchanan used excessive or unreasonable force in making the arrest. Specifically, as stated by the court in its charge to the jury, it was whether Buchanan shot Sanders in self-defense.

At the trial, Sanders testified as a witness in his own behalf. Over objection, counsel for Buchanan was permitted to ask Sanders whether at times prior to the night of the arrest he had been in designated vicinities and had engaged in certain stated acts. Sanders answered the questions in the negative. Over timely and proper objection, counsel for Buchanan was permitted to introduce evidence of witnesses who testified that Sanders had, in fact, been in such vicinities on a number of occasions and at different times had committed such acts.

Over like objection, counsel for Buchanan in his argument to the jury was permitted to comment on the evidence as to Sanders being in such vicinities and committing such acts, and the court in ruling on the objection to such argument stated, in effect, that it was admitted that Sanders had been convicted of vagrancy. I find no basis whatever in the record for such a statement by the court.

Such inquiries, evidence, and argument, augmented by the statement of the court, tended to create in the minds of the jury that Sanders was a habitual night prowler, window-peeper, and vagrant. They placed him in a very unfavorable light before the jury, and were highly prejudicial. Moreover, it may be stated parenthetically that at the time he fired the shot and arrested Sanders, Buchanan had no knowledge of any misconduct on the part of Sanders prior to the night of the arrest, if in fact any misconduct had occurred.

The inquiries, the evidence, and the comments made in argument related wholly to collateral matters, and were clearly not material to any issue at the trial. I digress to state that Sanders offered no evidence of his good character or his reputation for truth and veracity. Since such inquiries related wholly to collateral matters, Buchanan was bound by the answers of Sanders thereto, and impeachment by evidence contradicting such answers was improper and highly prejudicial. "Impeachment by contradiction is not permitted on collateral matters." [1]

Even if Sanders had been convicted of vagrancy, evidence thereof would not

---

1. Head v. Halliburton Oilwell Cementing Company, 5 Cir., 370 F.2d 545, 546; 3 Wigmore on Evidence, 3d ed., § 1003; Coulston v. United States, 10 Cir., 51 F.2d 178, 181.

have been admissible to impeach him, because vagrancy is not a felonious or infamous crime.

For the reasons stated, I dissent from the denial of the petition for rehearing.