**LOR PRODUCTIONS, INC., a corporation, Appellant,**

v.

**VALLEY MUSIC HALL, INC., a corporation, dba VMH, Inc. International, Appellee.**

**No. 544–70.**

United States Court of Appeals, Tenth Circuit.

Sept. 3, 1971.

Wendell E. Bennett, Salt Lake City, Utah (Dolle, O'Donnell, Cash, Fee & Hahn, Cincinnati, Ohio, and Strong & Hanni, Salt Lake City, Utah, on the brief), for appellant.

James R. Brown, of Jardine, Baldwin, Pruitt & Brown, Salt Lake City, Utah, for appellee.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

SETH, Circuit Judge.

This is an action for damages brought by appellant, asserting a breach of contract by the appellee to purchase phonograph records. The action was commenced in Utah and the appellee asserted the defense of mutual mistake and of fraud. The case was tried to a jury which found in favor of the appellee by its answer to the interrogatory submitted to it relative to the defense of mutual mistake. The other issues were reserved for disposition by the court.

The record shows that a vice president of the defendant-appellee, Mr. Pedersen, went to the place of business of the appellant in Ohio to secure a contract whereby the company he represented would have the exclusive right to sell throughout the United States a group of records known as the "Journey to Bethany." The negotiations lasted over a period of two days during which time a series of conversations was had between Mr. Pedersen and representatives of the appellant, including Mr. Al Cash, Jr., who was an attorney and who held an interest in the appellant company. Finally a proposed contract was drafted and was executed by the parties. At the time the draft was completed and before execution, Mr. Pedersen asked several questions of Mr. Cash concerning the provisions relating to exclusive rights and minimum purchases. It is the testimony as to these questions and answers upon which the defense of mutual mistake is based.

At the time the negotiations began, Mr. Pedersen wished to have a contract whereby his company would have the exclusive right to sell the records but would not be obligated to take any certain number, and instead would use their best efforts to sell. The negotiators on behalf of the appellant took the position that it was necessary, if an exclusive arrangement was agreed upon, that the appellee agree to buy a minimum number of records during stated periods of time.

The contract was entered into and the parties began their performance thereunder; however, appellee failed to take the minimum number of records provided in the contract for several of the periods concerned. The appellant did not for this reason terminate the contract but instead began this action for damages for breach of the entire contract.

The defense asserted by the appellee purchaser of mutual mistake relates to the consequences that would follow from its failure to buy the minimum number of records stated in the agreement. The appellee asserts that the only result

would be that it would lose its exclusive right to sell the records. The appellant on the other hand asserts that the contract provided and the parties agreed that the appellee would be liable in damages in the event of the breach of the contract, and the damages would be computed on the basis of the minimum purchase required during the entire term of the contract.

It is not necessary to set out the contract provision for the reason that the trial court found that it required that the appellee purchase the minimum stated in the contract, and if it did not do so it would be liable for damages for breach of contract. As against this determination of what the contract provided on its face, the appellee, to show mutual mistake, introduced the testimony as to the questions and answers referred to above which took place shortly before the execution of the contract. The appellant moved to strike the defenses of fraud and of mutual mistake at the conclusion of all the evidence. The court did strike the defense of fraud but did not strike the defense of mutual mistake. The issue of mutual mistake was thereupon submitted to the jury by way of a special interrogatory, and the jury found that there was a mutual mistake.

On this appeal the appellant asserts it was error for the trial court to have submitted the issue of mutual mistake to the jury for the reason that there was insufficient evidence on the issue. The testimony of Mr. Pedersen as it appears in the transcript relative to this point of the negotiations is as follows:

"THE WITNESS: We began to read through the contract, and the question of the 400 units a month—we had to buy 400 units a month for about two or three months. And then beginning along about April, we had to be—we had to buy 500 units per month. My—I asked the question to Mr. Cash that 'do we have to buy 400 units per month?'

"And he said: 'No, but you'll lose your exclusive.'

"And then I asked him the question: 'If I don't buy 400 units per month, or some month if we happen to drop below this minimum number, will you automatically cut off our exclusive?'

"And he said: 'No, I mean, that's not the spirit of what we're trying to do. I just don't want Tom to get caught in a situation to where someone has an exclusive from us, and if you're not buying enough units to make that exclusive worthwhile, that you can just go on forever buying units at your leisure.'

"I asked him if I had any other obligation other than buying 400 units to maintain our exclusive. And he said no."

Following the questions and answers referred to above, Mr. Pedersen executed the contract after reading it and after asking for some minor changes in the wording which are not pertinent here. It was on the basis of the above answers by Mr. Cash, who was negotiating on the part of the appellant, and the understanding of Mr. Pedersen as evidenced by his questions that the defense of mutual mistake was based. As indicated above when the appellant's motion to strike the defense of mutual mistake was denied, the issue was thereafter submitted to the jury by way of the interrogatory and under instructions which were not objected to by the parties.

The evidence introduced relating to the defense of mutual mistake presented facts from which reasonable men could draw different inferences. This court has considered a variety of circumstances presented in cases concerning the granting or denial of motions for directed verdict and for judgment notwithstanding the verdict. These give us guidance on the related issue here presented. In Farr Co. v. Union Pac. R. R., 106 F.2d 437 (10th Cir.) we said:

"The rule is that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally

no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed."

See also, Franklin v. Skelly Oil Co., 141 F.2d 568 (10th Cir.).

Central Surety & Insurance Corp. v. Murphy, 103 F.2d 117 (10th Cir.), concerned a traffic accident, and the issue on appeal was whether the trial court should have directed a verdict on the ground there was insufficient evidence on which to submit the issue of negligence to the jury. We there said:

"But contradictions and conflicts of evidence are for the jury, and where the evidence and the inferences fairly deducible from it are such that reasonable minds may honestly draw different conclusions from them, the question is not one of law but of fact to be determined by the jury."

See, National Mutual Casualty Co. v. Eisenhower, 116 F.2d 891 (10th Cir.).

■ In the case before us there was no serious contradiction in the testimony as to the questions and answers and generally what was said upon the completion of the draft of the contract. This testimony concerns what the officer of appellee asked of appellant's attorney-negotiator and what the responses were; it was material, and of substance. However, there are different inferences to be drawn from this testimony in itself, and also in the light of prior statements of position by the parties. The trial court ruled as to what the contract on its face provided, but the inferences to be drawn from the testimony of the witnesses go to the substance of the mutual mistake issue. Since there were different possible inferences, it was proper to submit the matter to the jury in order that it could make the factual determination in the light of the court's instruction as to what the agreement stated on its face. There was also sufficient evidence introduced to warrant submission of the issue to the jury, and under the proof this had become a matter clearly within the province of the jury.

■ The appellant also urges that the trial court was in error in submitting the issue under an instruction which stated in substance that the defense could be supported by a preponderance of the evidence. The contract provides that it be construed and enforced according to the laws of the State of Ohio, but in any event it appears to be the rule in Ohio and in Utah, as well, that the defense of mutual mistake must be demonstrated by clear and convincing evidence. There seems to be no dispute on this appeal as to the standard to be followed in supporting such a defense. However, the matter was submitted by the trial court under an interrogatory and instructions which were expressly agreed to by the attorneys for both parties. The attorney for the appellant answered the question of the court to the effect that that was his understanding of the law. This question was put and answered after the jury had been instructed by the court. The court also specifically asked two of the attorneys for the appellant, who were Ohio lawyers, to express their views as to the special interrogatory keeping in mind the law of Ohio. They indicated that it was proper. Under these circumstances, the appellant is bound by the wording of the interrogatory and by the instructions given by the court. Sanders v. Buchanan, 407 F.2d 161 (10th Cir.); Sill Corp. v. United States, 343 F.2d 411 (10th Cir.).

The appellant also urges as error on the part of the trial court its refusal to strike the defense of mutual mistake at the conclusion of the evidence; however, we have considered this general issue above and conclude it to be without merit.

As an additional issue raised on appeal relating to ratification, we find no error in the refusal by the trial court to submit this issue to the jury.

Affirmed.