**James ACREE, Plaintiff-Appellee,**

v.

**The MINOLTA CORPORATION, Defendant-Appellant.**

No. 82–1173.

United States Court of Appeals, Tenth Circuit.

Nov. 15, 1984.

Peter J. Ruddick, Olathe, Kan. (Gary L. Lane, Olathe, Kan., on brief) of Speer, Austin, Holliday, Lane & Ruddick, Chartered, Olathe, Kan., for plaintiff-appellee.

Mark A. Corder of Hackler, Londerholm, Corder, Martin & Hackler, Olathe, Kan., for defendant-appellant.

Before BARRETT and LOGAN, Circuit Judges, and JENKINS, District Judge.*

JENKINS, District Judge.

The Minolta Corporation, the defendant in a diversity case for breach of contract, appeals a judgment entered against it pursuant to a jury verdict. We affirm.

James Acree, a sales representative of Minolta from July 1978 to May 1980, brought this action in Kansas State Court to recover the value of certain trips he claimed to have won while he was a Minolta employee. After Minolta counterclaimed for Acree's failure to return various copying equipment used for demonstrations, Acree amended his complaint to allege a breach of an employment contract.

---

* Honorable Bruce S. Jenkins, United States District Judge for the District of Utah, sitting by designation.

Minolta then removed the action to federal court. After a five day trial, the jury returned a verdict in favor of Acree for $41,765, and in favor of Minolta on its counterclaim for $2,357.

I.

Minolta's primary claim on appeal is that the trial court erred in responding to two notes from the jury without first consulting with counsel. During its deliberation, the jury sent two notes to the court; and the judge, without notifying either counsel that the jury had submitted questions, responded as follows:

Question: "Should Judge O'Connor have included consideration of loss of car for 9 months in instruction #15?"

Response: "Loss of car was not included because the court ruled that he was not entitled to damage for this item."

Question: "We seem to be missing the police report re: machines. Is that point relevant to our deliberations?"

Response: "A police report was referred to, but was not offered or admitted into evidence."

The first question from the jury concerned damages. Acree claimed that he was entitled to $5,000 in damages for the loss of use of a company car. On a motion for a directed verdict at the close of all the evidence, the court denied this claim entirely. Accordingly, instruction #15, which instructed the jury on damages, did not include the loss of use of the car as an element of damages.

The jury's second question was related to Minolta's counterclaim for Acree's failure to return demonstrator equipment. Acree claimed that he failed to return a copier because it had been stolen. To prove that it had been stolen, Acree offered a police report that referred to the theft. After Minolta objected to the report as hearsay, the parties stipulated in the presence of the jury that the copier had been stolen, and Acree withdrew the exhibit.

The United States Supreme Court, held in *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919), that giving supplemental instructions to the jury in the absence of the parties is reversible error. In *Fillippon*, the plaintiff sought damages for his employer's negligence. The plaintiff's duty was to push a wooden wedge beneath a large block of slate held up by crowbars so that chains could be placed around the block. Although the usual practice was to insert the wedge by hand only as far as possible without putting his hand under the block, and then push the wedge in further with a stick, the plaintiff, responding to his foreman's order to do so, pushed the block all the way in with his hand. The block slipped suddenly and crushed his hand.

The plaintiff's claim for negligence was tried to a jury. During its deliberation, the jury sent a note to the judge inquiring "Whether the plaintiff in pushing the wedge beneath the block of slate with his hand, having full knowledge of the risk involved, thereby became guilty of contributory negligence, even though told by Foreman Davis to 'push it under.'" *Id.* at 80, 39 S.Ct. at 436. Without notifying counsel for either party, the trial judge sent back its written reply: "If he did so, fully appreciating at the time the danger attending and having sufficient time to consider, when he was face to face with a situation that would have made a reasonably prudent man to disobey the orders of the foreman, notwithstanding, and he went ahead in spite of the dangers known to him and apparent, he is guilty of contributory negligence." *Id.* The Supreme Court ruled that to give this supplementary instruction to the jury in the absence of the parties was error:

We entertain no doubt that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict. Where the jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence

of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object.

*Id.* at 81, 39 S.Ct. at 436. *See also United States v. Walker,* 557 F.2d 741 (10th Cir. 1977); *Parfet v. Kansas City Life Insurance Co.,* 128 F.2d 361 (10th Cir.), *cert. denied,* 317 U.S. 654, 63 S.Ct. 50, 87 L.Ed. 526 (1942); *See generally,* Annot., 32 A.L. R.Fed. 392 (1977).

■ Notwithstanding this general rule, it is not error if the instructions given to the jury are merely administrative directions rather than supplementary instructions. *Sanders v. Buchanan,* 407 F.2d 161 (10th Cir.1969); *General Motors Corp. v. Walden,* 406 F.2d 606 (10th Cir.1969); *see also Throckmorton v. St. Louis-San Francisco Ry. Co.,* 179 F.2d 165, 170 (8th Cir.), *cert. denied,* 339 U.S. 944, 70 S.Ct. 797, 94 L.Ed. 1359 (1950). The difficulty in the present case is in determining whether the notes the trial judge gave to the jury were supplemental instructions like the ones given in *Fillippon, Walker,* and *Parfet,* or administrative directions like the ones given in *Sanders* and *Walden.*

In *Sanders,* a civil rights action brought under 42 U.S.C. § 1983, the plaintiff brought an action against a police officer for shooting the plaintiff. During its deliberation, the jury sent a note to the court. The judge replied in writing: "The court has received your request which reads as follows: 'Can we have the police manual with clauses underlined denoting the proper circumstances under which a policeman may shoot? Clauses which were read in court.' The court cannot grant this request." 407 F.2d at 163.

In *Walden,* after deliberating for some time, the jury sent the following note to the court: "Your Honor, we are sitting five to one, and apparently cannot get any closer. We do not know what to do. Will you

please instruct us." 406 F.2d at 609. In the absence of counsel, the court answered: "The Court has received your note and advises you that you are to continue to deliberate." *Id.*

Both *Sanders* and *Walden* involved purely administrative matters. Neither trial court told the jury what the law is or instructed the jury how to apply the law to the evidence. Accordingly, the administrative directions were not error.

■ In the present case, the court's answer to the jury's second question, regarding the police report, was very similar to the court's response in *Sanders.* Both courts responded to a request for an exhibit that was not in evidence. The only difference is that the court in *Sanders* informed the jury that it could not have the exhibit, while the court here explained the reason the jury could not have the exhibit. The trial court's explanation did not instruct the jury on what the law is or on how to apply the law to the evidence. Nor did it instruct the jury on how to conduct itself. It merely gave the jury collateral information that did not affect its deliberation. Accordingly, the answer to the jury's question regarding the police report was an administrative direction. It was not error for the judge to give it.

■ However, the trial court's response to the jury's first question, whether the plaintiff was entitled to damages for the loss of use of the car, was a supplemental instruction. The jury had previously been instructed on how it should determine damages. The court added to that instruction by telling the jury not to award damages for loss of the use of the car. The note was a direct statement of law concerning the plaintiff's measure of damages. Therefore, the judge erred in giving that supplemental instruction without first consulting with counsel.[1]

---

1. *Petroleum Corp. v. Cantelou Oil Co.,* 107 F.Supp. 373 (W.D.Penn.1952), is not contrary to our holding here. The party in that case waived its right to be present for supplemental instructions by leaving the vicinity of the courtroom.

*Walden* is also not on point. To instruct the jury not to consider a matter is altogether different from instructing the jury to continue to deliberate.

This does not end our inquiry, however. A finding of error does not require reversal unless the error affected substantial rights of the parties. 28 U.S.C. § 211 (1982); compare Fed.R.Civ.P. 61. The harmless error rule applies equally to supplementary instructions as it does to any other ruling by the trial court. The Second Circuit, speaking through Judge Learned Hand, concluded:

> [L]ike other rules for the conduct of trials it is not an end in itself; and, while lapses should be closely scrutinized, when it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity.

*United States v. Compagna*, 146 F.2d 524, 528 (2d Cir.1944), *cert. denied*, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945).

■ The Supreme Court has indicated that reversal is not necessarily required in criminal cases if a supplementary instruction is harmless error. *Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975). *A fortiori*, reversal is not required in civil cases if a supplementary instruction is harmless error.[2] We now join the other circuits that have so held. *See Skill v. Martinez*, 677 F.2d 368, 371 (3d Cir.1982); *Dixon v. Southern Pacific Transportation Co.*, 579 F.2d 511, 513–14 (9th Cir.1978); *Charm Promotions, Ltd. v.*

*Travelers Indemnity Co.*, 489 F.2d 1092, 1095–96 (7th Cir.1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974).

■ After reviewing the record, we have concluded that the supplemental instruction regarding damages for the loss of use of the car did not affect substantial rights of the parties. At the outset we note that the instruction was an accurate statement of law.[3] The judge *had* previously ruled that the plaintiff was not entitled to damages for the loss of use of the car. It would have been improper for the jury to consider the loss of the car in computing damages.

Minolta speculates that the supplemental instruction indicated to the jury that Acree's other claims had merit; otherwise, the court would have decided those claims as well. We cannot agree. Minolta's argument assumes that the jury inferred from the supplementary instruction something the court's explicit instructions—including the one on damages they asked questions about—told them it was their duty to answer. Such speculation cannot support the award of a new trial. Accordingly, the supplemental instruction regarding the loss of use of the car, although error, did not affect substantial rights of the parties.

If the administrative direction regarding the police report had been error, it too

---

**2.** Even though the language of Fed.R.Civ.P. 61 is substantially similar to the language of Fed.R. Crim.P. 52(a), there is a fundamental difference between the two rules. In a criminal trial, the defendant has a right to be present at each stage of the trial. Fed.R.Crim.P. 43. The Supreme Court has interpreted Rule 43 to require that jury messages be answered in open court and that the defendant's counsel be given an opportunity to be heard before the court responds. *Rogers* at 39, 95 S.Ct. at 2094; *United States v. Walker*, 557 F.2d 741, 745 (10th Cir.1977). Litigants in civil cases do not have these same constitutional protections. *See Dixon v. Southern Pacific Transp. Co.*, 579 F.2d 511, 513 n. 1 (9th Cir.1978).

**3.** Minolta, citing *Parfet v. Kansas City Life Insurance Co.* 128 F.2d 361 (10th Cir.), *cert. denied*, 317 U.S. 654, 63 S.Ct. 50, 87 L.Ed. 526 (1942), argues that an error of this sort always affects substantial rights of the parties. We disagree. First, we note that in *Parfet* we did not consider

the question of whether the error was harmless. *See Walden* at 610. Second, we believe that the substance of the judge's statement will always be relevant in determining whether the statement affected rights of the parties. Generally speaking, accurate statements of law are far less likely to be prejudicial than inaccurate statements are.

However, we do not suggest that the error will always be harmless if the supplemental instruction is an accurate statement of law. For example, if the note from the jury indicates confusion on the part of the jury, a failure to provide the parties with an opportunity to clear up the confusion might affect substantial rights of the parties, at least in a criminal case. *See United States v. United States Gypsum Co*, 438 U.S. 422, 460, 98 S.Ct. 2864, 2885, 57 L.Ed.2d 854 (1977); *United States v. Walker*, 557 F.2d 741 (10th Cir.1977). The notes involved in the present case did not indicate that kind of confusion.

would have been harmless. The court's response to the jury was accurate.[4] The police report had *not* been admitted into evidence. However, Minolta argues that the trial court called special attention to the police report and raised questions in the jurors' minds about whether the report was damaging to either party. Again, this argument is wholly speculative. It assumes that the jury inferred from the note that the report was harmful to Minolta. There is no basis for that assumption. Therefore, even if it had been error to tell the jury that the police report had not been admitted into evidence, the error wuld not have affected substantial rights of the parties.

## II.

Minolta next argues that the trial court erred in not directing a verdict and in not entering a judgment notwithstanding the verdict. Minolta asserts that there was insufficient evidence to support the jury's finding that the parties had entered into a written contract.[5] We disagree.

In determining whether to direct a verdict or to enter a judgment notwithstanding the verdict, the court must consider the evidence, and all reasonable inferences that could be drawn from the evidence, in the light most favorable to the party against whom the motion is brought. *Wilkins v. Hogan,* 425 F.2d 1022, 1024 (10th Cir.1970). After viewing the evidence in this light, the court is justified in directing a verdict or entering a judgment notwithstanding the verdict "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *Fischer Const. Co. v. Fireman's Fund Insurance Co.,* 420 F.2d 271, 275 (10th Cir.1969).

After reviewing the record, we have determined that there was sufficient evidence to support the jury's findings. Whether a contract has been entered into depends on the intent of the parties, and intent is a question of fact for the jury. *See Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 60, 643 P.2d 100, 107–07 (1982).[6] The record indicates that Minolta prepared a written agreement and presented it to Acree for his signature. He signed it and delivered it back to Minolta. This was sufficient evidence for the jury to find that Minolta had made an offer to Acree and that he had accepted it.

Minolta argues that the undisputed evidence was that the parties intended that the contract would not be in effect until it was signed by a representative of Minolta. Acree had testified that he understood that the contract was to go to New Jersey for signature and that his two previous employment contracts had been sent to New Jersey for signature. Minolta asserts that this pattern of the parties' prior dealings is conclusive. However, the jury could have believed that the signature by a representative of Minolta was only a formality. Indeed, the jury could have believed that Acree's two previous contracts were also created when he signed them and that the signature by a Minolta representative was always a mere formality. The proof was not so overwhelming as not to permit the conclusion the jury reached. Therefore, the court did not err in refusing to direct a verdict or in refusing to enter a judgment notwithstanding the verdict.

## III.

Minolta also argues that the trial court should have set aside the $41,765 jury award as excessive and awarded a new trial.[7] Our duty in reviewing the

---

4. Although the court stated that the exhibit had not been offered when in fact it had been offered and withdrawn, any prejudice arising from the inaccuracy would have harmed Acree, the party who offered the exhibit.

5. The pretrial order limited the plaintiff's claim to an action for breach of a written contract.

6. This case raises an interesting conflict of laws question. First the contract was prepared in New Jersey, Minolta's principal place of business, but was signed by Acree in California.

Second, it was to be performed in Missouri, Nebraska, the Dakotas, and in other states. And last, Acree, a resident of Kansas, brought this action in Kansas. However, because the general contract principles in issue are the same regardless of the jurisdiction involved, we need not decide which state's laws apply.

7. Minolta also argues that the court should have awarded a new trial because the jury could not have found that a written contract had been signed by Minolta. Our discussion of the mo-

court's refusal to grant a new trial is to determine whether the court abused its discretion. "However, absent an award so excessive or inadequate as to shock the conscience and to raise an irresistable inference that passion, prejudice, corruption, or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Barnes v. Smith*, 305 F.2d 226 (10th Cir.1962).

 Our review of the record persuades us that the trial court did not abuse its discretion in refusing to set aside the jury's award. Acree testified that he could have earned more than $80,000 under the contract. He testified that the value of medical insurance he lost was greater than $1,500 and that the value of trips he lost was greater than $5,500. His testimony alone was sufficient to sustain the jury's finding.

### IV.

Minolta's remaining claims are without merit. Minolta asserts that the court erred in not granting Minolta's motion for summary judgment. Summary judgment is inappropriate if material facts are in dispute. *Atlas Sewing Centers, Inc. v. National Association of Independent Sewing Machine Dealers*, 260 F.2d 803, 806–07 (10th Cir.1958). Minolta asserts that there was no issue of material fact regarding the existence of grounds for Acree's termination. However, Acree hotly contested the issue and offered evidence at trial to prove Minolta's breach. Summary judgment would have been particularly inappropriate.

Minolta complains that the trial court committed numerous errors in evidentiary rulings. However, error in ruling on the admissibility of evidence "is not grounds for reversal unless it can be reasonably said that the ... [ruling] precluded a fair trial on all competent evidence." *Sims Consolidated Ltd. v. Irrigation & Power Equipment Inc.*, 518 F.2d 413, 418 (10th Cir.), *cert. denied*, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 141 (1975); *see also* Fed. R.Ev. 103(a). After reviewing the rulings Minolta claims were erroneous, even assuming that they were error, we are unable to conclude that the error affected substantial rights of the parties.

Minolta's final claim is that the trial judge conducted himself improperly.[8] Minolta argues that the judge asked a prejudicial question to one of Minolta's witnesses. While a Minolta representative was testifying about the quota provisions in Acree's contract and about Acree's failure to meet those quotas, the court asked a clarifying question: "These quotas, I get from your testimony they are put in these contracts, and what are they, any more than sort of guides or what? You don't fire every employee because he misses a quota."

 The Federal Rules of Evidence specifically provide that "[t]he court may interrogate witnesses, whether called by itself or by a party." Fed.R.Ev. 614(b). The trial judge in a federal court is more than a mere moderator. He has a duty "to assist in getting all the material facts before the jury in a truthful and orderly manner." *Smith v. Welch*, 189 F.2d 832, 837 (10th Cir.1951). Although the court's question "You don't fire every employee because he misses a quota" appears to be more rhetorical than a question from a trial judge ought to be,[9] we do not think the trial court abandoned his impartial attitude

---

tion to direct a verdict on this point applies here with equal weight. The court did not abuse its discretion in refusing to award a new trial; the evidence adequately supported the jury's verdict.

**8.** Minolta claims that the trial judge appeared disgruntled and upset with Minolta's counsel in open court, and that the judge's conduct improperly influenced the jury. Although we agree that the trial court should always remain impartial and should always strive to project an

impartial attitude to the jury and to the parties, we find no reversible error in the judge's conduct.

**9.** This court recognizes that there is more to communication than the cold words that appear on a transcript. However, because intonation, gestures, and demeanor are not recorded, this court cannot consider those factors. We cannot speculate about the non verbal parts of communication that may have brought into question the judge's impartiality.

and became an advocate for one of the parties. Therefore, the manner in which the court asked the question was not error.

Even if the manner in which the court asked the question were error, Minolta waived its right to challenge the error on appeal by failing to object to the questions at the first opportunity when the jury was not present. *See United States v. Vega,* 589 F.2d 1147 (2d Cir.1978). Minolta asserts that it did not object because it did not want to antagonize the court. That does not affect the validity of the waiver. Advocates must continually weigh the relative advantages and disadvantages of trial strategies. Minolta received whatever advantage it sought in not antagonizing the court; it cannot now claim the advantages of the course it deliberately chose not to pursue.

For the above reasons, we affirm the judgment of the district court.