**CHARM PROMOTIONS, LTD., Plaintiff-Appellant,**

**v.**

**The TRAVELERS INDEMNITY COMPANY, Defendant-Appellee,**

**v.**

**Mel GOLDMAN et al., Third Party Defendants.**

**No. 18363.**

United States Court of Appeals, Seventh Circuit.

July 6, 1971.

Rehearing Denied Sept. 7, 1971.

Lee A. Freeman, Jr., David J. Lester, Lee A. Freeman, Joseph P. Antonow, S. Cody Engle, Chicago, Ill., for plaintiff-appellant.

Max Wildman, Rupert J. Groh, Jr., Maurice J. Garvey, Chicago, Ill., for defendant-appellee; Wildman, Harrold, Allen & Dixon, Chicago, Ill., of counsel.

Before KILEY, PELL and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

Plaintiff, Charm Promotions, Ltd. (Charm) appeals from a summary judgment for Travelers Indemnity Company (Travelers) in this diversity action to recover under a fidelity bond written by Travelers.[1] We reverse and remand for trial.

In January, 1966, Charm was incorporated in Illinois pursuant to an agreement between Automatic Accounting Corporation (Automatic),[2] an Illinois corporation owned equally by Goldman, Brown, and Albert Heisler (the "Chicago Group"), and Weingeroff and Glick Enterprises, Inc. (Enterprises), a Rhode Island corporation owned by Frederick and Louis Weingeroff, George Glick, and Harry and Joslyn Oken (the "Providence Group"). Automatic and Enterprises each loaned $75,000 to Charm, and each owned one-half of Charm's stock. Automatic and Enterprises each named three Charm directors.[3] The directors "designated," as Charm's officers, Goldman president, Brown secretary, and Frederick Weingeroff vice-president.

Charm's corporate purpose, according to the agreement, was a promotional

---

1. Third party suit of defendant Travelers against Mel Goodman, Ronald M. Brown and Bernie Schulman was dismissed.

2. Goldman was president and Brown was executive vice-president.

3. Enterprises selected Glick, Harry Oken and Frederick Weingeroff as directors, and Automatic named Heisler, Goldman and Brown.

merchandising program, using novelty charms and bracelets, in aid of supermarkets and other retailers. The Providence Group, in Rhode Island, manufactured, packaged and shipped the novelties directly to Charm's customers. Marketing was the function of the Chicago Group which received payment for the novelties from the retailers and kept the Charm books and records. Bylaws required all Charm checks to be signed by an officer in Chicago and an officer in Providence.

Shortly after Charm was incorporated it purchased from Travelers a $400,000 fidelity bond for protection against "any fraudulent or dishonest act or acts committed by any of the Employees." In February, 1967, Heisler, Charm's accountant, informed the Providence Group that he suspected Goldman and Brown of improperly diverting approximately $235,000 of Charm's funds. Representatives of the Providence Group determined the moneys had been diverted and secured resignations of Goldman and Brown as Charm officers. Charm thereafter filed its claim under the terms of the fidelity bond, but Travelers refused to pay. Charm's suit followed, with Travelers filing a third party complaint against Goldman, Brown and Schulman.

In the district court both Charm and Travelers filed motions, and Travelers an amended motion, for summary judgment. The sole issue presented by the motions was whether Goldman and Brown were covered by the bond.[4] The district court decided in favor of Travelers that there was no genuine issue of material fact as to whether Goldman and Brown were employees as defined in the bond, and entered judgment for Travelers. This appeal followed.

So far as pertinent, the bond protected Charm against loss due to any fraud or dishonesty "committed by any of the Employees, acting alone or in collusion with others." The vital bond definition of "employee" is:

> Any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the Policy Period and whom the Insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character.

We think the summary judgment was improper because various affidavits and depositions of the parties raise genuine issues of material fact with respect to whether Brown and Goldman received "salaries, wages or commissions" for services rendered in the ordinary course of Charm's business; and whether they were subject to control of the Charm board of directors. Travelers' original summary judgment motion asserted a right to summary judgment on the first issue, and its amended motion asserted a similar right as to the second issue. Since the elements in the issues are both required under the bond definition of "employee," if Travelers is sustained as to either ·asserted right the district court judgment must be affirmed. Because Travelers has presented its arguments as to the elements of the bond definition separately, we shall treat them separately here.

### I.

In support of its original motion, Travelers attached the affidavits of Brown and Goldman. Brown, an attorney, stated he was never in Charm's "regular service," never "performed any services" for or had an employment contract with Charm, was never "paid any

---

4. For the purpose of the motion for summary judgment, the fact that Goldman and Brown diverted $235,000 of Charm's funds for the purpose of converting its assets, as alleged in the complaint, is admitted as true.

wages [or] * * * had a commission agreement with" Charm, and that the Providence and Chicago Groups considered themselves partners owning the business of Charm. Goldman's affidavit was substantially the same. Both Brown and Goldman stated that they received checks for $7,500 and $8.076.96, respectively, from Charm on May 11, 1966; that these checks represented a distribution of accumulated cash in Charm's bank account, but were labeled as salary in order to avoid double taxation, pursuant to an agreement between the directors at an April meeting; and that these checks were the only payments they had received from Charm.

Thereafter, Charm deposed Goldman and Brown and moved for partial summary judgment with supporting affidavits of, among others, Frederick Weingeroff, Heisler, Harvey Pestine[5] and James C. Mills.[6] These affidavits were to the effect that when Charm was formed, it was agreed that all officers would receive compensation from Charm when funds became available from sales receipts; and that the checks received by Goldman and the other officers in May 1966 were payments of salaries for services rendered in the ordinary course of Charm's business.

Charm relied also upon the depositions of Goldman and Brown taken after their affidavits supporting their previous motion to dismiss. Brown stated he was paid a salary, depending on the "availability of funds," and that he performed administrative and legal services for Charm. Both Goldman and Brown reaffirmed the conference decision about the tax stratagem in issuance of the checks. In support of its theory that the checks were payments of salaries, Charm filed copies of the checks, which showed deductions for withholding and for social security, and copies of Brown's and Goldman's income tax returns, showing payment and receipt of the checks as salaries.

Finally, Travelers filed an amended motion for summary judgment requesting a decision as a matter of law that neither Goldman nor Brown was an "employee" within the bond definition at the time of the alleged acts of dishonesty. The amended motion was supported by a copy of the corporate bylaws and by excerpts from the depositions of Frederick Weingeroff, Heisler, Brown and Goldman. The bylaws provided that directors were not to receive salaries for their services and that the salaries of all officers and agents were to be fixed by the Charm board of directors. Heisler, in his deposition, stated that the representatives of Charm, at the April meeting, decided that there were sufficient profits in the company for a "distribution" and that the money should be taken out as salaries for tax purposes and divided equally.[7] Heisler and Weinger-

---

5. An accountant for Automatic who worked on Charm's books and records.

6. President of J & H International Corp., a sales company engaged by Charm.

7. The distribution was as follows:

| Shareholder of Automatic | Ownership Percentage | Amount Received |
|---|---|---|
| Goldman (Pres.) | 33⅓% | $ 8,076.96 |
| Heisler | 33⅓% | 7,500.00 |
| Brown | 33⅓% | 7,500.00 |
| Total | 100 % | $23,076.96 |
| Shareholder of Enterprises | | |
| F. Weingeroff (Pres.) | 25 % | 6,201.90 |
| L. Weingeroff | 25 % | 5,625.00 |
| G. Glick | 25 % | 5,625.00 |
| H. Oken | 12½% | 2,812.50 |
| J. Oken | 12½% | 2,812.50 |
| Total | 100 % | $23,076.90 |

off stated that the April meeting was not a regular or special meeting of the board of directors; that the payments made as a result of the meeting were the only payments ever made to Charm officers; and that no provisions were ever made for the establishment of future compensation.

We think it is clear that there are issues of fact raised by these various pleadings with respect to the nature of the checks received by Goldman and Brown from Charm, and the nature of the services, if any, performed by them. This is related to one of the elements in the bond's definition of "employee." Questions of credibility are raised at least by the affidavits and depositions of Goldman and Brown. We cannot say as a matter of law that the issues of fact presented are not genuine.

█ This is not to say, however, that these elements of the definition of "employee" must be fulfilled strictly and narrowly. It is sufficient that Goldman and Brown were engaged in a course of employment on behalf of Charm and were compensated for the work they did. The essential requirement under this bond is that "the loss arise out of the insured's employment." Wooddale, Inc. v. Fidelity and Deposit Co. of Maryland, 378 F.2d 627, 632 (8th Cir. 1967). If the trier of fact should find that Charm compensated, or intended in the future to compensate, Goldman and Brown for services performed in the ordinary course of business for Charm and find the additional element—that Charm had the right to control these officers—

the trier of fact could reasonably find that Goldman and Brown were employees of Charm within the policy definition, even if their compensation was not periodic and regular and even if any compensation paid was combined with a distribution of the profits of the company.[8]

## II.

Travelers, in its amended motion, also sought summary judgment on the basis that Charm had no right to "govern and direct" Goldman and Brown in the performance of their activities for Charm, as required by the bond definition of "employee." In support of its motion, it relied on statements in Weingeroff's and Goldman's depositions that Charm was to function as a joint venture between the Providence and Chicago Groups; that each group had authority under the bylaws to name three directors, and that Brown, Goldman and Heisler—who each owned one-third of the shares in Automatic—named themselves directors and Goldman and Brown, president and secretary, respectively. Travelers asserts that under these circumstances Charm had no right to govern or direct Brown and Goldman, but rather Brown and Goldman governed and directed Charm.

Charm's memorandum in support of its motion for summary judgment, incorporated by reference into its motion, stated that Brown and Goldman were subject to Charm's direction and control. This memorandum was supported by the affidavits of Pestine, Heisler and Mills, and the depositions of Brown and Goldman, to the effect that Goldman and

8. The payment of salaries in proportion to stockholdings does not, in itself, indicate that the payments were dividends instead of salaries. The Internal Revenue Service will usually scrutinize such payments in order to ensure that the compensation received is reasonable, Hammond Lead Products, Inc. v. Commissioner of Internal Revenue, 425 F.2d 31 (7th Cir. 1970); Clinton Co. v. Commissioner of Internal Revenue, 159 F.2d 102 (7th Cir. 1946), but ordinarily some amount will be allowed as salary if the recipient has performed regular services for the company in the ordinary course of its business, San Marco Shop, Inc. v. Commissioner of Internal Revenue, 223 F.2d 702 (5th Cir. 1955); Charles McCandless Tile Service v. United States, 422 F.2d 1336, 191 Ct.Cl. 108 (1970). Moreover, whether the compensation is a deductible business expense for tax purposes is not necessarily of controlling importance on the question whether the persons receiving the payments were "employees" within the meaning of the policy.

Brown managed the operations of Charm on a regular and daily basis;[9] by the provisions in the bylaws that officers are responsible to the board of directors and that all checks are to be countersigned by an officer of each group; by the deposition of Weingeroff that Brown and Goldman were required to resign as officers upon discovery of the alleged embezzlement; and by the affidavits of Brown and Goldman to the effect that neither individually was a sole or majority shareholder or a sole or majority officer.

It is not clear from the district court's order that it entered summary judgment on the basis that Charm did not "govern or direct" Brown and Goldman, and most of the affidavits and depositions were directed at the issue of compensation. We think that if it made that finding as an uncontroverted fact it did so erroneously, since there are issues of fact raised by the pleadings, which involve questions of credibility. We cannot presume, as Travelers would have us do, that no members of either group would ever join the other group when serious interests of Charm were involved, or that each group would always vote as a block on all questions involving Charm.[10] This case, unlike Kerr v. Aetna Casualty and Surety Co., 350 F.2d 146, 154 (4th Cir. 1965), does not involve a situation where the officer involved is the sole or majority shareholder of the insured, *see* Insurance Company of North America v. Greenberg, 405 F.2d 330, 332–333 (10th Cir. 1969), and neither Goldman nor Brown acting individually could control Automatic or Charm, either under the bylaws or under the incorporation agreement.

We conclude that the summary judgment was improper and we remand for trial. The district court presumably dismissed Travelers' third party complaint on the ground stated in the motion of

Brown and Goldman *i. e.*, that "these [counter-] defendants are not employees of the plaintiff within the definition of 'employee.'" Since the question whether Goldman and Brown are "employees" is to be decided by the trier of fact, the dismissal order must be vacated at this point in the case.

Reversed and remanded for further proceedings and for trial.

9. The affidavits stated that Goldman and Brown performed such functions as countersigning all checks, receiving bills and weekly reports from supermarket customers, negotiating with suppliers and ship-pers, visiting supermarkets, and advising customers.

10. Heisler, a Chicago Group director, informed the Providence Group of Goldman's and Brown's alleged derelictions.