**CHARM PROMOTIONS, LTD.,**
**Plaintiff-Appellant,**

v.

**The TRAVELERS INDEMNITY COM-**
**PANY, Defendant-Appellee,**

v.

**Mel GOLDMAN et al., Third-Party-**
**Defendants.**

**No. 72–1889.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1973.

Decided Nov. 9, 1973.

---

Lee A. Freeman, David J. Lester, Chicago, Ill., for plaintiff-appellant.

Max E. Wildman, Chicago, Ill., for defendant-appellee.

Before KILEY, CUMMINGS and SPRECHER, Circuit Judges.

PER CURIAM.

Plaintiff Charm Promotions, Ltd. appeals from a jury verdict—in this diversity action—in favor of defendant Travelers Indemnity Company to recover under a fidelity bond written by Travelers covering Charm's "employees." We affirm.

In January, 1966, Charm was incorporated in Illinois pursuant to an agreement between Automatic Accounting Corporation (Automatic)[1] an Illinois corporation owned equally by Goldman, Brown, and Albert Heisler (the "Chicago Group"), and Weingeroff & Glick Enterprises, Inc. (Enterprises), a Rhode Island corporation owned by Frederick and Louis Weingeroff, George Glick, Harry and Joslyn Oken (the "Providence Group"). Automatic and Enterprises each loaned $75,000 to Charm, owned one-half of its stock, and named three Charm directors.[2] The directors designated, as Charm's officers, Goldman President, Frederick Weingeroff and Glick vice-presidents, Brown secretary, Harry Oken treasurer, and Heisler assistant vice-president.

Charm sold novelty charms and bracelets to supermarkets, the supermarkets paid Charm on delivery, and returned items not sold for full refunds. The Providence Group manufactured, packaged, and shipped the merchandise in Rhode Island, and the Chicago Group marketed the novelties in Chicago. Charm hired a promotional organization, J & H International Corporation (J & H) to act as its sales agent. Charm's books and records were kept in Chicago, but all checks issued by it had to be signed by an officer in Chicago and countersigned by one in Providence.

Shortly after incorporation, Charm purchased from Travelers a $400,000 fidelity bond to protect it against "any fraudulent or dishonest act or acts committed by any of the Employees." The bond defined "Employee" as:

> Any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the Policy Period and whom the Insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character.

Losses "due to any fraudulent, dishonest or criminal act by an Insured or a partner therein whether acting alone or in collusion with others," were excluded from coverage.

In February, 1967 Heisler informed the Providence Group that he suspected Goldman and Brown of improperly diverting approximately $235,000 of

---

1. Goldman was president, and Brown was executive vice-president.

2. Enterprises selected Glick, Harry Oken, and Frederick Weingeroff. Automatic named Heisler, Goldman and Brown.

Charm's funds to their own use. The Providence Group determined the moneys had been diverted and secured the resignations of Goldman and Brown as Charm officers. Subsequently, Charm was unable to make refunds to supermarkets for returned merchandise and J & H assumed the Charm obligation of refunding approximately $400,000.[3]

Travelers refused to pay Charm's claimed losses under the terms of the fidelity bond. Charm filed this suit and Travelers then named Brown, Goldman, and Bernie Schulman third party defendants.[4] Following discovery, the trial court granted Travelers' motion for summary judgment. We reversed and remanded for a trial,[5] following which the jury found in favor of Travelers. This appeal followed.

No contention is made that the evidence does not support the verdict.

## I

During the course of its deliberations, the jury sent a written question to the judge which he answered without giving notice to counsel or the parties, and in their absence. Charm's counsel first became aware of the communication one week later. Neither the note nor the judge's answer thereto were preserved for the record but affidavits in the record of two jurors set forth the general character of the inquiry and answers: the jury asked whether Brown and Goldman "could have a criminal judgment brought against them;" the judge wrote back "No."

Charm contends that this ex parte communication constituted reversible error per se. We disagree.

We think that the recent decisional trend away from the older per se rule [6] in the federal courts [7] represents sound doctrine. Judge Learned Hand said in United States v. Compagna, 146 F.2d 524, 528 (2d Cir. 1944), cert. denied, 324 U.S. 867, 65 S.Ct. 912, 89 S.Ct. 1422 (1945):

[I]t is true that courts are extremely jealous of [communication between judge and jury] once the jury has been locked up; and we do not wish to abate that jealousy in the least; it is most undesirable that anything should reach a jury which does not do so in the courtroom. This is, indeed, too well settled for debate. [Citing cases.] But, like other rules for the conduct of trials, it is not an end in itself; and, while lapses should be closely scrutinized, when it appears with certainty that no harm has been done, it would be the merest pendantry to insist upon procedural regularity.

Later in Walker v. United States, 116 U.S.App.D.C. 221, 322 F.2d 434, 435 (1963), cert. denied, 375 U.S. 976, 84 S. Ct. 494, 11 L.Ed.2d 421 (1964), the defendant appealed his robbery conviction contending, inter alia, that the trial judge's ex parte answer to the jury's question was reversible error. Although the court agreed that the judge erred, it held: "Such an error does not require reversal, however, when the record shows with reasonable certainty that it did not prejudice the defendant's substantial rights." [8]

---

3. J&H has secured a judgment in the Circuit Court of Cook County against Charm for $328,524, the unpaid amount Charm presently owes J&H for its assumption of the obligation.

4. Schulman was an alleged accomplice of Goldman and Brown.

5. Our opinion is at 447 F.2d 607 (1971).

6. Arrington v. Robertson, 114 F.2d 821 (3d Cir. 1940); Parfet v. Kansas City Life Insurance Company, 128 F.2d 361 (10th Cir. 1942), cert. denied, 317 U.S. 654, 63 S.Ct.

50, 87 L.Ed. 526 (1942); Breslin v. National Surety Company, 114 F.2d 65 (3d Cir. 1930); Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927). Note that *Shields* was a criminal case where the demands of due process are especially strong.

7. The issue is procedural rather than substantive, and therefore federal law controls.

8. See also Ware v. United States, 376 F.2d 717 (7th Cir. 1967); United States v. Hoffa, 367 F.2d 698 (7th Cir. 1966), vacated on

*Walker* and *Compagna* were criminal cases but that does not render them inapposite; on the contrary, the refusal to apply a per se rule when an individual's liberty is at stake is persuasive authority that a more rigorous standard is not mandated in civil cases. We hold that a trial judge's ex parte communication with the jury after it has begun its deliberations is not per se reversible error, but is controlled by F.R.Civ.P. 61:

> No error in . . . anything done . . . by the court . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

In our opinion the substance of the communication did not "affect the substantial rights of the parties." Furthermore, at Charm's request, the trial court instructed the jury as follows:

> To warrant recovery under the bond, the "dishonest act" of an employee need not be such as would involve criminal liability of the employee for its commission. The meaning of fraud and dishonesty extends beyond acts which would be criminal.

The instruction informed the jury that dishonesty was not coextensive with criminality, but was broader, and the jury's subsequent communication with the judge was irrelevant to the ultimate issue: Travelers' liability to Charm for the dishonest acts of Charm's employees.[9] Although we disapprove the communication of the judge to the jury in absence of counsel, and the failure to preserve the notes, we hold that any error in the judge's conduct was harmless.

## II

Just prior to the commencement of trial, and over the opposition of Charm, the court permitted third-party defendant Schulman to file a $210,000 claim against Charm and Enterprises. Schulman alleged that pursuant to an agreement, he developed two packaging machines for Charm and Enterprises for which he was to be paid $20,000 plus 20% of the savings realized from use of the machines.[10] The jury found in favor of Charm and against Schulman.

Notwithstanding its favorable verdict against Schulman, Charm contends that the trial court committed reversible error in permitting Schulman's claim to be filed because it confused the jury and prejudiced Charm's suit against Travelers. Charm argues that Schulman's claim does not arise out of Charm's suit on the fidelity bond and thus clearly violates Rule 14(a):

> The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

Furthermore, Charm argues that the claim was a sham since Schulman admitted the machines were never put into operation, and at the close of trial abandoned all but $15,000 of his claim.

---

other grounds, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1966); United States v. Glick, 463 F.2d 491 (2d Cir. 1972); United States v. Arriagada, 451 F.2d 487 (4th Cir. 1971). Professor Wright maintains: "When all of the circumstances about the communication are known, and when it can be said 'with certainty that no harm has been done,' it would be insisting on form to reverse." 3 Federal Practice and Procedure, 203 (1969).

9. Admittedly the communication is susceptible to differing interpretations, but none of them relate to whether Brown and Goldman were employees who performed a dishonest act in the scope of their employment.

10. Charm contended that the claim was untimely, was sham and false under F.R.C.P. 11, and violated F.R.C.P. 14(a). The district court eventually determined that Enterprises was not a proper party and eliminated reference to it in its jury instructions.

■ Assuming, arguendo, that the Schulman claim violated Rule 14(a) and was a sham, we are not convinced that its inclusion in the case "misled . . . and distracted" the jury. Charm has failed to show it suffered prejudice; and in view of the weight of the evidence supporting the verdict, we decline to speculate that it was prejudiced.[11]

### III

We find Charm's contentions that certain evidentiary rulings and jury instructions of the trial court were erroneous and prejudicial to be without merit.

During the trial, evidence was admitted relating to alleged earnings of Enterprises, Charm, and J & H, and Charm's obligation to J & H for the refunds paid to supermarkets. Charm argues the evidence was irrelevant and misleading.[12] The court also excluded as hearsay testimony of Glick and Glass concerning Heisler's statements to the Providence Group of Brown and Goldman's activities.

■■ We see no error in these rulings. The main issue in the case was whether Goldman and Brown were employees and officers of Charm who committed dishonest acts in the course of their employment and whom Charm compensated by "salary, wages or commissions" and whom Charm had the right to govern and direct in their work. Travelers (and Goldman and Brown as third-party defendants) maintained that they were not employees; that Charm was part of a joint venture between the Chicago and Providence Groups; and that Goldman and Brown were either partners with the members of those Groups, or that they so controlled Charm that it was merely their alter ego, so that their acts in appropriating the moneys were acts of the "Insured" not covered by the policy. The evidence admitted was, therefore, relevant. Glick and Glass' testimony was offered to prove the truth of the matter asserted (that Heisler informed the Providence Group) in order to rebut the argument that a Chicago-Providence partnership existed, and was clearly excludable hearsay.

■ The district court, over Charm's objection, tendered instructions to the jury on certain corporate formalities which Charm contends misstated the law applicable to "small corporations" and were prejudicial.[13] While we agree

---

11. There is no basis in the record to attribute to Travelers any purposeful tactical wrongdoing with regard to the Schulman claim. Travelers' counsel referred to it only once, in a statement that is too fragile to support any inference of wrongdoing:

Your Honor, on behalf of defendant Travelers, we have no objection to the amended answer nor to the counterclaim, since it involves the same issues, and we think it would be better to dispose of everything at one time. [Tr. 4, June 19, 1972]

12. Charm also contends that this allegedly irrelevant evidence might have been excluded had the court conducted a pretrial conference as requested by Charm. The holding of a pretrial conference is within the court's discretion; and at the June 5, 1972 hearing on the holding of a conference, the court said: "If you want to limit it to some specific thing, or set me out something we can dispose of on the pretrial, I would be glad to." The court appeared willing to hold the conference had the subject been specified.

13. The instructions were:

It is the law in Illinois that the business and affairs of a corporation shall be managed by a Board of Directors. At the first annual meeting of the shareholders, and at each annual meeting thereafter, the shareholders shall elect directors to hold office. Meetings of the Board of Directors shall be held upon such notice as the by-laws may prescribe.

It is also the law in Illinois that officers of a corporation shall be elected by the Board of Directors at such time and in such manner as may be prescribed by the by-laws.

All officers and agents of a corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the property as may be provided in the by-laws, or as may be determined by resolution of the Board of Directors.

Officers of a corporation, as such, are entitled to compensation, only as is fixed by

with Charm that a closely held corporation need not comport with all the technical requirements of the Illinois Business Corporation Act,[14] the instructions given herein were not prejudicial.

 Charm also argues that the court's instruction with respect to the method of salary payment was erroneous and contrary to this court's prior decision in this case. In material part, that instruction read:

> (3) That such fraudulent or dishonest acts, if any, were committed by employees whom Charm compensates by salary, wages or commissions, *during that period, the same period.* . . . (Emphasis added.)

In our earlier decision reversing the grant of summary judgment in favor of Travelers, we said:

> If the trier of fact should find that Charm compensated or intended in the future to compensate, Goldman and Brown for services performed in the ordinary course of business for Charm . . . the trier of fact could reasonably find that Goldman and Brown were employees of Charm within the policy definition, even if their compensation *was not periodic and regular* and even if any compensation paid was combined with a distribution of the profits of the company. (*Charm, supra,* at 611 of 447 F.2d; emphasis added.)

Thus Charm contends that the instruction required it to prove more than this court said was necessary.

We hold that the instruction was not improper. We do not think that the instruction contradicts this court's earlier statement. "Periodic" is not synonymous with "during that period," and therefore compensation, even though not periodically and regularly paid, could have been paid during the period in question. Furthermore, the language of our prior opinion should not be extended

beyond that purpose for which it was intended. We there reversed a summary judgment against Charm; we did not promulgate jury instructions.

 Charm also contends that it was error to give a missing witness instruction with respect to Heisler. We hold that even if it was erroneous it was not prejudicial.

Judgment affirmed.

---

a by-law of the corporation or a resolution of the Board of Directors fixing such compensation.

14. See Galler v. Galler, 32 Ill.2d 16, 203 N. E.2d 577 (1965).