677 F.2d 368
 Margaret SKILL and Arthur J. Skill, Jr., Husband and Wife,
v.
G. B. MARTINEZ, M.D., Robert Renza, M.D., and Ortho
Pharmaceutical Co., Ortho Pharmaceutical Company, Appellant.
 Nos. 81-2831, 81-2832.
 United States Court of Appeals,
Third Circuit.
 Argued April 27, 1982.
Decided May 10, 1982.
 
 David F. Dobbins, Patterson, Belknap, Webb & Tyler, New York City, Jeanne A. Taylor, Parker, McCay & Criscuolo, P. A., Mount Holly, N. J., for appellant; Frederick T. Davis (argued), Leslie C. Levin, New York City, of counsel.
 Norman Perlberger, James R. Kahn (argued), Larry Haft, Philadelphia, Pa., on the brief, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellees.
 Before ALDISERT, WEIS and BECKER, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 Ortho Pharmaceutical Company appeals from an adverse judgment entered on a jury verdict in a diversity case tried under New Jersey law and asserts three contentions for reversing the trial court: that the trial court improperly instructed the jury in the absence of its counsel, that plaintiffs' counsel improperly made repeated references to an alleged duty of Ortho to warn the public directly and to Ortho's alleged failure to heed the Federal Drug Administration's required patient warning, and that counsel improperly referred to new precautions taken by appellant subsequent to 1976. We find no reversible error and we affirm.
 
 
 2
 Appellee Margaret Skill took Ortho-Novum, an oral contraceptive manufactured by the appellant, from 1969 until August 1976. She suffered a cerebral vascular accident, or a stroke, in January 1977. Alleging that ingestion of Ortho-Novum together with cigarette smoking had caused her stroke, Mrs. Skill sued Ortho under a theory of products liability, Restatement (Second) of Torts § 402A.[1] The case was tried for three weeks before a jury, and, based on answers to special interrogatories, Ortho was held liable to the extent of 35 percent of appellee's damages.
 
 
 3
 Appellant's first contention arose out of the following operative facts: The jury began deliberations in the late afternoon following the judge's charge and later were dismissed for the night. They resumed deliberations at 9:20 a. m. the following day. Appellant's counsel was not present in court because of car trouble but twice telephoned the court explaining the reason for her delay. At 9:55 a. m. the jury submitted a note to the court, inquiring "What is Ovulen-21? Is this a birth control pill or does it control ovulation?"[2] With plaintiff's counsel present, and in the absence of counsel for Ortho, the court responded in writing: "This is just another birth control pill that has nothing to do with this case." Subsequent to the arrival of appellant's counsel, at about 11:25 a. m. Ortho lodged an objection to the court's response, whereupon the court ruled: "I am not at this time going to bring the jury back here at 11:25 in response to a note they gave me at five minutes to 10, an hour and a half ago, because I think it opens up a whole new bag." The jury's inquiry and the court's response were not preserved.
 
 
 4
 Except for an entry in Mrs. Skill's medical record from approximately two years before her stroke, the only references in the record to Ovulen-21 appear in the following cross-examination of Mrs. Skill:
 
 
 5
 Question: Is it true that at the time he prescribed a one month course on January 15, 1975, of Ovulen for you, Ovulen?
 
 
 6
 Answer: I think he gave me a six-month prescription but then my menstrual cycle, when it didn't start, then he gave me something else.
 
 
 7
 Question: I have his record. One month, Ovulen-21. Did you go out and fill a prescription for a drug called Ovulen-21, did you take that pill?
 
 
 8
 Answer: Was that the first or second time I saw him?
 
 
 9
 Question: First time.
 
 
 10
 Answer: I guess I did.
 
 
 11
 App. at 225.
 
 
 12
 Question: When you got the Ovulen, the one month supply of Ovulen, that was a different kind of pill than Ortho-Novum, I mean it was a different kind of brand, wasn't it?
 
 
 13
 Answer: I didn't even know I was given a different brand.
 
 
 14
 Question: When you looked at it, didn't it look different?
 
 
 15
 Answer: It was in a dialpak.
 
 
 16
 Question: But it had a different name on it, didn't it?
 
 
 17
 Answer: I wouldn't have noticed that, as long as it was a dialpak, I mean, I-
 
 
 18
 Question: It was all the same to you?
 
 
 19
 Answer: Yes.
 
 
 20
 Question: If it was a dialpak. So therefore the fact that there was a different name on it, a pill from a different company, that didn't cause you to read the flaps that were on it, I take it?
 
 
 21
 Answer: No.
 
 
 22
 App. at 229-30. The record is silent as to Ovulen-21's manufacture, ingredients, dosages, warnings, method of use, possible side effects, or anything concerning it other than the preceding colloquy. We believe that the absence of record information identifying Ovulen is important because, although we are persuaded that although the trial court erred, the error was harmless under the circumstances.
 
 
 23
 Speaking through Judge Maris, this court observed in Arrington v. Robertson, 114 F.2d 821, 822-23 (3d Cir. 1940), that it was error for the court to send instructions to the jury in the absence of the defendant or his counsel and without giving him notice and an opportunity to be present, where the jury's inquiry and the court's response were not reported by the court's stenographer and the record did not disclose the phraseology of the jury's question. The facts here presented are identical in all material respects to those of Arrington. We therefore hold that the court erred in this case.
 
 
 24
 Appellant argues also that Arrington requires reversal even in the absence of a showing of prejudice. There is language in that decision to support the argument, but we do not agree that Arrington compels reversal when appellant has not shown harm. In Snyder v. Lehigh Valley Railroad Co., 245 F.2d 112, 117 (3d Cir. 1957) (in banc), a concurring opinion by Judges Maris, Goodrich, McLaughlin, and Hastie-a majority of the court-left open the question that we decide today, stating:
 
 
 25
 We reserve judgment on the question whether a new trial must be granted solely because of such a communication if the communication is clearly shown to be harmless to the parties or wholly collateral to the issues under consideration by the jury. The case before us is not such a case nor do we understand that such a case was presented ... in Arrington v. Robinson, 3 Cir., 1940, 114 F.2d 821.
 
 
 26
 Finding the question open in this court, we hold that a trial court's unrecorded ex parte communication with the jury after it has begun its deliberations is subject to the provisions of Fed.R.Civ.P. 61, which requires the court to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." See Dixon v. Southern Pacific Transportation Co., 579 F.2d 511, 513-14 (9th Cir. 1978); Charm Promotions, Ltd. v. Travelers Indemnity Co., 489 F.2d 1092, 1095-96 (7th Cir. 1973) (per curiam), cert. denied, 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974).
 
 
 27
 We are persuaded that the error in this case did not affect appellant's substantial rights. Arguing in the district court that the court erred in its answer to the jury's question, Ortho contended that Ovulen-21 could have been a superseding cause of the stroke. It did not present any evidence at trial to support this contention. On appeal, it argues a new theory, that Mrs. Skill's use of Ovulen-21 was relevant to impeachment of her testimony. Even if we were to consider this argument, see Pfeifer v. Jones & Laughlin Steel Corp., --- F.2d ----, ---- n.1 (slip op. at 6 n.1) (No. 81-1928, 3d Cir. April 16, 1982), we would hold that it clearly lacks merit. Under either of appellant's theories, therefore, there was no error in the instruction given.
 
 
 28
 We find that appellant suffered no harm from the error in this case. We emphasize, however, that it is counsel's duty and responsibility to be available to the court during the jury's deliberations.
 
 
 29
 We have carefully considered appellant's other contentions and we are persuaded that they do not merit reversal.
 
 
 30
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Other named defendants are not parties to this appeal
 
 
 [2]
 Addressing appellant's post-trial motions, the court indicated that the query was "to the effect" quoted above. Skill v. Martinez, 91 F.R.D. 498, 504 (D.N.J.1981). The court's and plaintiff's counsel's contemporaneous recollections were not entirely consistent. See App. at 601